AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| GARY GAROUTTE | ) | Case No. 12-8310-DLB |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED by _____ D.C.
AUG - 3 2012
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 2, 2012__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii). | Knowingly and Intentionally Possessing with Intent to Distribute a Controlled Substance, namely 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Shelton C. Hammonds
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/03/2012__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__    Hon. U.S. Magistrate Judge Dave Lee Brannon
*Printed name and title*

AFFIDAVIT
OF
SHELTON C. HAMMONDS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

I, Shelton C. Hammonds, being duly sworn, depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for the past three years. I am currently assigned to PB-2, the Violent Crimes and Major Offender Squad of the Palm Beach County Resident Agency, Miami Division. Prior to joining the Miami Division, I attended the FBI Academy in Quantico, Virginia, for five (5) months where I received training in federal criminal laws and investigation techniques. Among my responsibilities as a Special Agent are investigating all violent criminal violations to include federal drug violations. During my employment with the FBI, I have participated substantially in numerous narcotics investigations. That participation includes, but is not limited to, the following: conducting physical and electronic (wire) surveillance; reviewing and analyzing recorded conversations; executing search and arrest warrants; processing and handling evidence; controlling and handling confidential sources; reviewing and analyzing documents and records relating to drug trafficking activity; and participating in the arrests and subsequent prosecution of drug traffickers.

2. I submit this affidavit based on information known to me personally from the investigation, as well as information obtained from others who were directly involved in the matter or have personal knowledge of the facts herein. I am investigating the illegal drug activities of Gary GAROUTTE (hereinafter referred to as GAROUTTE). Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause that GAROUTTE has committed violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

3.    Over the past several weeks law enforcement, through the use of an undercover officer (hereinafter referred to as UC), has engaged in a number of communications and meetings with GAROUTTE regarding the purchase of methamphetamine, as well as conducting approximately 4-5 controlled purchases of methamphetamine. Following each of the prior controlled purchases of methamphetamine, the substance purchased was field tested and yielded a positive result for methamphetamine. Thereafter, on July 27, 2012, the UC and GAROUTTE met at the Burger King restaurant located on 45th street near Interstate 95 to complete a previous transaction in which GAROUTTE fronted the UC approximately 45 grams of methamphetamine. Law enforcement surveillance officers observed GAROUTTE and his girlfriend, Gwendolyn Moore, sitting in a beige Dodge Caliber with an attached license plate reflecting the number Y4TEN in the parking lot when the UC arrived. The UC parked near GAROUTTE and exited the vehicle. The UC handed GAROUTTE $2,000.00 in U.S. currency and was observed talking to GAROUTTE through the open driver side window. During this conversation, GAROUTTE asked the UC if he/she was interested in doing a future eight ounce deal. They discussed pricing and eventually agreed to a price of $12,000.00 in return for eight ounces of methamphetamine. The UC told GAROUTTE he needed to reach out to his partner and would call GAROUTTE in a few days. GAROUTTE then drove off.

4.    On August 1, 2012, the UC received a telephone call from GAROUTTE. During this conversation, the UC and GAROUTTE discussed the eight ounce "meth" deal and the UC informed GAROUTTE that he was good to go on the deal. GAROUTTE advised that it would take him a couple of days to get a shipment in from his supplier and that he could do the deal on Friday, August 3, 2012, or at the latest on Monday, August 5, 2012. The UC asked if it was possible that they could do the deal on Thursday, August 2, 2012. GAROUTTE replied he would have to check with his supplier and would contact the UC later that day. Later the UC spoke with

GAROUTTE who stated that he (GAROUTTE) was in Miami picking up the eight ounces of methamphetamine. GAROUTTE agreed to meet the UC on August 2, 2012, to complete the sale of methamphetamine.

5. On August 2, 2012, GAROUTTE called the UC and they agreed to meet later that day at the Sam's Club parking lot located at 4295 45th Street, West Palm Beach, Palm Beach County, Florida. At approximately 2:00 p.m. GAROUTTE arrived at the agreed upon meet location. GAROUTTE exited his vehicle and walked over to the driver side window of the UC vehicle. GAROUTTE then handed the UC a bag containing the methamphetamine and stated, "It should be all there." Ultimately, GAROUTTE was taken into custody. Thereafter, law enforcement field tested the suspected methamphetamine which yielded a positive result for methamphetamine and had an approximate weight of 7.5 ounces (210 grams).

6. Based on the above information and facts, I respectfully submit that there is probable cause to believe that GAROUTTE, did knowingly and intentionally possess with intent to distribute a controlled substance, namely 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States, Sections, 841(a)(1) and 841(b)(1)(A)(viii).

SHELTON C. HAMMONDS, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION


Subscribed and sworn to me
before this 3rd day of August, 2012.

DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 12-8310-DLB

### BOND RECOMMENDATION

DEFENDANT: GARY GAROUTTE

Pre-trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: AUSA: JENNIFER C. MILLIEN

Last Known Address: _____

What Facility: _____

Agent(s): S/A SHELTON C. HAMMONDS
(FBI) (SECRET SERVICE) (DEA) (IRS) (ICE) (**OTHER**)
FBI